Common Pleas Court of Clark County.

TRANSIT IMPROVEMENT CO. V. THE SPRINGFIELD RAILWAY CO.*

Decided May 3, 1930.

*Cole, Bowman & Hodge,* for plaintiff.

*Martin & Corry,* for defendant.

*M. E. Spencer* and *Arthur J. Todd,* for the answering cross-petitioner city of Springfield, Ohio.

---

*Affirmed by Court of Appeals for reasons stated in this opinion. Affirmed by Supreme Court of Ohio. Appeal to U. S. Supreme Court dismissed for lack of a federal question.

DAVIS, J.

The matter now before the court is a question of priority of alleged liens against the property and franchise of the defendant, the Springfield Railway Company. It is raised by the allegations of certain pleadings filed by two of the parties in this cause and an agreed statement of facts by the same parties. These pleadings are the cross-petition of the Real Estate Land Title & Trust Company, the answer and cross-petition of the city of Springfield, and the replies of the parties.

The Real-Estate Land Title & Trust Company assert a lien upon all the property and franchise of the Springfield Railway Company, by virtue of two mortgages executed by the said the Springfield Railway Company to the predecessor of the Trust Company as trustee for the holders of certain bonds of the said Springfield Railway Company.

The city of Springfield alleges liens upon all the property and franchise of the Railway Company by virtue of alleged defaults by the said Railway Company of its obligations under the said franchise.

Each of these two parties contend that their respective liens are entitled to priority over the lien, or alleged lien, of the other.

The claims set up by the city in its first, second and third causes of action are for the annual payment to the city by the defendant company of one and a quarter (1-¼) per cent of its gross earnings, as provided in Section 28 of the original franchise contract.

The city contends, in argument, that certain of these sums now unpaid should be held to be liens upon the property of the defendant company, superior to the liens of the mortgage held by plaintiff, although in the prayer of its answer and cross-petition, the city only asks for judgment upon these items, and not that they be found to be preferred claims.

However, this point may be disposed of by considering the contention and argument of the city that they constitute liens.

Such sums as have accrued under this provision of the franchise up until appointment of the receiver in this case, and still remain unpaid are simply unpaid obligations or debts of the defendant company, which cannot be construed as a lien against its property. They represent the compensation which the city received for the exercise of the franchise by the company, and are part of the consideration of the original franchise contract.

Moreover, while the contracting parties undertook to provide what obligations should be liens against the property of the plaintiff, the language of those provisions cannot be construed to include those annual payments. So we must hold that what was not included, is properly excluded.

But the situation is different under the receivership. In the entry appointing the receiver, the court authorizes the receiver to take possession of and to run, manage and operate the said properties and assets of the defendant here, and "to exercise the authority and franchise of the defendant. * * * Said receiver is hereby authorized to collect and receive the rents, income, tolls and profits of the property and assets of the defendant and to make appropriate payments therefrom."

The court cannot instruct and empower the receiver to exercise the authority and franchise of the defendant, and to accept the fruits and profits thereof for the benefit of one of the parties, but not of the other.

The argument is presented that the receiver has not adopted the franchise contract. It is not for the receiver to say what he has or has not adopted. He was appointed by a former judge of this court, and is clothed with such powers and duties as the court, in its discretion, saw fit to give him. It is difficult to see how he could "exercise the authority and franchise of defendant" without recognizing the contract from which the franchise springs.

The court therefore holds that the annual payments which have accrued under the receivership have priority over earlier liens, not because such payments are liens, but because they are obligations arising under the receivership.

The claim set up in the fifth cause of action in the answer and cross-petition of the city may be disposed of briefly. This is the alleged lien for the improvement of the property and road-bed of the defendant by the city. The improvement was made in 1919 under supposed authority of what were then Sections 3812-2 and 3812-3 of the General Code.

These statutes were afterwards held by the Supreme Court of Ohio to be unconstitutional, in *Cincinnati* v. *Harth,* 101 O. S. 344, as in violation of Section 6, Article VIII of the Constitution of Ohio, which provides:—

"No laws shall be passed authorizing any county, city, town or township, by vote of its citizens, or otherwise, to become a stockholder in any joint stock company, corporation or association whatever; or to raise money for, or to loan its credit to, or in aid of, any such company, corporation or association."

It is a familiar rule of law that where the parties have placed themselves in the position of attempting to execute a contract which the law forbids, the court will leave them where it finds them.

It thus becomes a serious question whether or not the city is entitled to even a judgment upon this cause of action, but without deciding that point, it certainly can assert no lien under it. The parties to the franchise contract can only be held to have contemplated such liens as are created by the valid exercise of the contract.

The claim of the city that it is subrogated to the rights of the railway company, or acquired an ownership of the property, or that the railway company is estopped, cannot avail it to the damage of prior lienholders who were not parties to the invalid proceeding.

However, this contention might become important if the property should be sold for enough to pay all preferred obligations and leaving a surplus belonging to the railway company and its general creditors. This consideration brings out the unusual character of this proceeding in determining priorities of liens before any judgment or order of sale has been made.

The claim set up in the fifth cause of action will therefore be denied to the extent as herein indicated.

The fourth cause of action presents a more serious question than the others, not only as a proposition of law, but also as to the extent of the interests involved.

It is a question as to the priority of liens between the mortgage of the plaintiff upon all the property of the defendant company given to secure bond holders, and the lien of the city for the company's share of the expenses of street improvements.

Many of the cases cited and much of the argument of counsel, is the enunciation of the law as between private interests. Such is not necessarily controlling in a case of the nature we have here where there is a conflict between private interests represented by the trustee as mortgagee for the benefit of the bondholders, and the interests of the general public and sovereign power of the state, as represented by the city.

The rule with which the rights and obligations of the respective parties is measured, is not the same in both types of cases.

In the case of *Cleveland Railway Company* v. *Cleveland,* 97 O. S., 122, after directing attention to the section of our Constitution which declares:—

"Private property shall ever be held inviolate, but subservient to public welfare,"

ends the decision in these words:—

"But if there were any doubt about the construction or application of this franchise to the admitted facts before us, again the city should prevail.

"In this day private interests and private rights must yield to public interests and public rights, and, where there is ambiguity or uncertainty as to which of the two constructions should prevail in a franchise contract, it is quite clear that that construction should be adopted by courts that would be most favorable to the public interest and welfare."

In the case of *Central Trust Company of New York* v. *Municipal Traction Company, et al.,* 169 Fed. Rep., 308, the court state:—

"The rule applicable to the ascertainment of that intention is that only that which is granted in clear and explicit terms passes by a grant of property, franchises, or privileges, in which the government or the public has an interest. Statutory grants of that character are to be construed strictly in favor of the public. Whatever is not unequivocally granted is withheld, and nothing passes by implication." (p. 312.)

Other citations to the same effect were made in this case and ample authority for the proposition is found not only in court decisions, but in other legal authority.

The franchise contract now under consideration was entered into by the parties in April, 1913. Section 13 of it provided, in part:

"All sums due said city from said company for the making of street improvements or repairs, or for the doing by the said city of any other thing required to be done by said company, under the terms of this ordinance, and which it fails to do, shall, until paid, constitute a lien and charge upon the property and franchise of said company, the same as if formally levied and assessed against said company as in the case of other municipal improvements, and the same may be certified by the city to the auditor of Clark county to be by him placed on the tax duplicate of said county, and to be collected as other taxes and assessments by the treasurer of said county."

In May, 1914, the railway company executed a mortgage upon all its property to a trustee for the benefit and protection of the holders of its bonds.

It is admitted that the trustee, at the time of the execution of the mortgage, had notice and knowledge of the franchise contract. At the time this franchise was granted and accepted, what were then Sections 9100-9101 and 9102 of the General Code of Ohio, provided that railways might be constructed within a municipal corporation; that the right to construct could only be granted by its council; by ordinance, Section 9102 being as follows:—

"After such grant, or the renewal of any grant has been made, by general or special ordinance, or the order of county commissioners, neither the muncipality nor com-

missioners shall release a grantee from any obligations or liabilities imposed by the terms of the grant, or renewal of any grant, during the term for which such grant or renewal was made."

This last provision has been retained in our state statutes continuously since then, and is still one of our statutory laws.

The court must therefore find that the provisions of this statute shall be read into the franchise grant as part of its conditions, *Cincinnati* v. *Public Utilities Commission*, 98 O. S. 370, and also that the various parties now before the court acquired their rights and assumed their obligations with knowledge of it and in contemplation of it and the effect of its provisions.

The question of priority of liens between these two contenders must be determined from the provisions of the original franchise contract, insofar as the rights of the city or the burdens placed upon the railway company, or those claiming under or through it, are concerned.

No subsequent amendment or act of the parties could release the grantee from any obligation or liabilities imposed by the terms of the grant, even if the parties attempted to do so.

Especially is this true since the amendment merely "created a new procedure for municipal street improvement and repair," as suggested in the brief of counsel for the trustee.

Taking up then the franchise as originally enacted, we find that in Section 13 already quoted, the parties undertook to provide for a lien in favor of the city against the property of the railway company for all sums due said city from said company for the making of street improvements or repairs. The language used is capable of no other sensible meaning, and the intention of the parties is clear. No question is raised as to the validity of the legislation by the city creating the claims upon which the fourth cause of action is based, so the court assumes they were validly created and finds that they constitute a lien against the property of the railway. No contention can be made that the claims of the bond-holders do not constitute a lien

against the same property by virtue of the mortgage to the trustee. So the only remaining question is as to priority between them.

Now, the rights of the public in the use of streets, and to have them kept in fit condition for such use is superior and paramount to the use of them for any other purpose. As our Supreme Court says in the case of the city of *Mt. Vernon* v. *Berman & Reed,* 100 O. S., page 1:—

"The only legal justification for a grant to a street railway to occupy the streets is because it contributes to and advances the public welfare and the purposes of traffic, passage and transportation."

Also the duty of a city to keep its streets fit for such use by improving and repairing them is an obligation which it can neither deny nor evade nor surrender.

The railway company which accepts the franchise and those claiming through it, are bound to know and recognize the paramount rights of the public and the positive duties of the city. After it (the railway company) has expressly agreed as part of the valid consideration for its grant, that it will assume part of the burdens growing out of such public rights and duties of the city, and has pledged its property in payment of same, it cannot thereafter defeat its agreement by conveying its property to a third party. The third party (the trustee in this case) can only acquire by such a conveyance (the mortgage herein), such rights and title to the property as the grantor (the railway company herein), possessed itself, and such property is taken with all the burdens and liabilities which it carried before the conveyance.

The railway company and those claiming through it are also bound to know that in a period of twenty-five years, which was the term of this franchise, expenses for improving and repairing the streets must be incurred. They are charged with knowledge of all these facts and proceeded voluntarily and with open eyes.

As said further by the court in the case last cited:—

"In the absence of express provisions in the franchise contract, of a character which the city was authorized to

include therein, the presumption is that the public rights shall be regarded and preserved by the company which accepts the grant.  *  *  *

"Rights in the streets or highways granted to public service corporations are at all times held in subordination to the superior rights of the public and all necessary and reasonable police ordinances, notwithstanding they may interfere with legal franchise rights.  The grantee takes them subject to the paramount right of the municipality to grade and improve its streets and make such requirements and regulations as are necessary and reasonable in order to make the streets suitable and convenient for use of the traveling public, and will be required to make such changes in its appliances as are rendered necessary thereby at its own expense."

Also quoting with approval:—

"The police power cannot be surrendered, so that the franchise of private corporations must be conclusively presumed to be acquired with reference to its existence, and contract rights must yield to the proper burdens imposed by growth and development."  (13 Ruling Case Law, 179, section 154).

In addition to the principle of law that in cases of conflict between public and private rights, such grants are to be construed strictly in favor of the public, there is a further consideration which must be resolved in favor of the city.  If, in a conflict of rights or equities the state must choose between burdens which are created and imposed by its own sovereign power and those voluntarily and privately assumed, it will protect the former in preference to the latter.  And if one of the parties must be held to have proceeded at their peril, it must be the one who chose to proceed, and not the one who was required to proceed.

The court therefore finds that the claims set up in the fourth cause of action of the answer and cross-petition of the city of Springfield, are valid and subsisting first liens against the property and franchise of the defendant, the Springfield Railway Company, and entitled to priority over the lien held by the plaintiff as trustee for the bond-holders, by virtue of the mortgages heretofore given and executed by the Springfield Railway Company.